Case number 21-5057, PayPal, Inc. v. Consumer Financial Protection Bureau and Rohit Chopra in his official capacity as Director, Consumer Financial Protection Bureau. Mr. Deal for the balance, Mr. Shanmugam for the appellate. Good morning, counsel. Mr. Deal, please proceed when you're ready. Good morning, Your Honor. May it please the court, Christopher Deal for the Consumer Financial Protection Bureau. The Bureau's prepaid rule requires that consumers get a short, easy-to-read disclosure before they sign up for a prepaid account. This appeal is about the Bureau's statutory authority to issue the rule. The District Court held that the Bureau lacked that authority on the theory that the Bureau's rule prescribes mandatory disclosure clauses. The District Court was wrong. The reason is straightforward. The rule doesn't prescribe any mandatory disclosure clauses. Instead, as relevant here, the Bureau's rule has three basic elements. The rule mandates the content of the short-form disclosures, it regulates the format of those disclosures, and it provides optional model language for use in the disclosures. First, the content requirements. The content requirements specify what information providers need to disclose in the short form. Many of these content requirements are about fees. For instance, providers need to tell consumers what their institution charges consumers for reloading cash into their accounts. Providers... Thank you. Can I just... I'm sorry to take you off the sequence that you had in mind, but can we just skip ahead to the wording just for one second, and then we can circle back to content? So I take it that the premise of your argument is that you don't contest the idea that because of the statutory language to the effect that the Bureau shall issue model clauses for at least that's the premise on which this case is being litigated by both sides. And if that's true, then I guess my question is this. If the Bureau gives two options for wording and says you have to do either wording A or wording B, then would that be consistent with the premise that there can't be mandatory clauses? Even if we buy your argument that clauses is limited to wording, putting to one side content and formatting. Your Honor, in that case where the... Obviously that's not what happened here, but where the agency said you can use this clause or that clause, I think that would be a much closer question. I think the court could conclude in that circumstance that the Bureau had prescribed the particular clauses that could be used, but here we don't have that. Here we have, you may use a particular optional clause or you can use any other clause, any other wording that's substantially similar. All right. And so then I guess the question becomes, if you think it's a difficult case with two options, then the question becomes how many options are there if it's substantially similar? I mean, I think you know where this is going. And so what is the range of options for substantially similar? And this is going to get complicated and I apologize for complicating the question, but it seems to me self-evident that the range of options is going to depend on the narrowness of the content requirement to begin with. And so even if we buy your argument that content is just off to one side and content doesn't have to do with model clauses, what model clauses has to do with is wording, then the number of wording options is going to be predicated to a large extent, to a considerable extent, it seems to me, on the narrowness of the content requirement to begin with. And here, some of the content requirements seem reasonably specific and that may well be perfectly fine given the authority of the Bureau to prescribe content requirements. But then it raises the question, well, then how many options are there really for wording, even if it's allowed, there's an allowance for substantially similar wording. Sure, Your Honor. So I think that it's important to not lose track here of the fact that we have is a congressional provision that requires optional model clauses. There isn't a standalone prohibition on cutting out flexibility for institutions. So I think the interpretation that's advanced by PayPal really creates the problem that it would suggest that whether or not the Bureau can require an institution to disclose a particular fee, how much they charge for ATM withdrawals, how much it costs to add money to their account depends on how many different ways there are to say that in the English language. And I don't think there's any textual basis for that kind of a conclusion. I mean, you can look, for instance, at the content requirements that are included in the statute itself in 1693C. One of those requirements is that the institution has to provide the telephone number and address of who the consumer should talk to if they think there's an unauthorized electronic fund transfer. By providing that, obviously the institution has to provide the correct phone number, the correct address. There aren't a million different ways to do that. I mean, there's no consistency here. Then I guess the question becomes, and I'm not saying the agency lacks the authority to do it, but I'm just wondering programmatically why do it? Because if the content requirement is pretty specific, and we assume for purposes of this argument that the content requirement can be imposed, then why cabinet to substantially similar language? Because there's always the authority on the part of the agency, I assume, to say, well, you're just not comply with the statutory directive that it has to be readily understandable. You're just deviating too far from the content requirement. What does the substantially similar proviso add that matters to the agency? What it adds is it ensures that consumers can readily compare one disclosure form to another. I think you're exactly right to note the connection between the substantial similarity requirement and the readily understandable requirement. I think they're getting at the same idea. This provides some additional meat on the bones, an additional way that the agency implemented that statutory requirement to ensure that when consumers are looking at the form for one prepaid account, and they're comparing it against another one, that they can compare apples to apples as opposed to having to wonder, oh, is this really the same fee or is it a different fee? While at the same time that the institutions retain the ultimate ability to pick an appropriate disclosure within those content and language bounds. But Mr. Teel, I mean, does the Bureau, I mean, can the Bureau, I think you agree that you can't issue mandatory model clauses. And so my question, perhaps following up on some of Judge Srinivasan's questions, is by adding substantially similar, can you just simply avoid that prohibition? Right, because I mean, the way that the rule is, you know, in multiple provisions reads is there is a content requirement, and you satisfy the content requirement by using a specified term or clause or something substantially similar. And I'm wondering really, if just by tacking on substantially similar, you can avoid the restriction on mandatory model clauses. So two things, Your Honor. One, just to be clear, we're only, we're not disputing that we lack the authority with respect to mandatory clauses for purposes of this case, because we don't think we did them and we wanted to simplify things. But I don't think that the substantial, as I was trying to explain before, I don't think that the substantially similar requirement is intended to be an end run. You know, it's not trying to get, force institutions to say the magic words. It's rather intended to provide, consistent with the statute, a surefire way for institutions to comply so they can know, you know, if I do this, I'll definitely be complying, but also give them flexibility to pick other things. Why isn't that sort of on the EFTs, right? So either they can use the clause that's been provided in the rule, or they take the risk of drafting their own language and complying with the content requirements. And then, you know, the Bureau can take action on the backend. I mean, this in some ways seems to be trying to just ensure, you know, I don't know, fewer enforcement actions or something like that. Like, I'm not sure what you really get. I mean, there are already so many incentives for EFTs to just use the language that the Bureau has provided. So if for some choose, they want to comply by using some language that maybe you think is not substantially similar, I guess I'm not sure where the authority comes from to kind of capture that, to capture those, you know, that type of wording, since you're not allowed to, you know, at least arguably the statute doesn't give you the authority to do a mandatory model clause. Well, I think a couple of things, Your Honor. One is that it's important to think about the overall structure of the Bureau's authority here. The Bureau has broad affirmative authority to issue rules to implement EFTA, and it has, and it's very clear that the Bureau has authority to issue rules with respect to disclosure requirements. Congress repeated that there. And then we have an optional model clause provision, which does not say you can't, doesn't say the Bureau can't do anything. We're sort of, you know, granting the premise for purposes of this case that the Bureau can't do something that's inconsistent with that provision, that conflicts with that provision. And so I don't think that saying you can, here's an optional model clause, use it, or use something that's substantially similar is in any way inconsistent with say, with the obligation to issue optional model clauses. You know, it doesn't, you know, it perhaps narrows somewhat the range of options, but it does so in a way that's entirely consistent with the statutory scheme related to readily understandable language. Would it not allow for side-by-side comparisons, which was part of your response, I think, to both of us on what's the advantage to cabining to substantially similar? And I take the point that the Bureau's interested in putting into effect a framework that allows for side-by-side comparisons on the part of consumers who, under the statute, have the benefit of wanting to be able to do it through readily understandable language so they can understand what the various conditions are. If the Bureau prescribed the order of the various content requirements, but then without the proviso of substantially similar language, would that still facilitate a side-by-side comparison? Because you could still see the first one and the first one, the third one, and the third one. Do you understand what I'm asking? Yeah. Yes, Your Honor. I think that the Bureau's conclusion was that each of these elements helps serve the same goal, right? They add together to make it easier for consumers to understand, to know what's going on. And I would note that the structure of the disclosure is that there are static fees, you know, fees that everyone needs to disclose. Those are the most common, most important fees. And then there are also some additional fees that are institution-specific. So there's, you know, already going to be some amount of disparity. So I don't think that the, you know, I don't think that the mere fact that there are some different language is going to necessarily cause, you know, a huge problem. But what the Bureau was after here was to try to make it as easy as possible for consumers to be able to do that comparison. And each of the elements of the rule together adds to that effect, you know, ensures that that goal can be met. Mr. Dale, can I ask you a question about remedy? I mean, if we were to agree that the prepaid rule imposes these mandatory model clauses, and Judge Leon's remedy was to say that it exceeds, the short-form disclosure exceeds the bounds of the Bureau's statutory authority to the Bureau's disclosure forms. So I note in your reply brief, you said that we should sever a provision. I mean, what would the remedy look like? I mean, do we have to, I mean, I assume obviously you would not want us to vacate the rule, but how would, to the extent that remedy, I mean, what would that even look like when it was sent back to the Bureau? Yes, Your Honor. So a couple of points on that. One, obviously we urge the Court to reverse, but I think that what the appropriate remedy would be if you didn't agree with us would depend on the reason you didn't agree with us. If you didn't agree with us because you thought that there was a problem with the substantial similarity language, then I think that the proper remedy would be, as we note in our briefs, would be severance and to indicate that the content and the formatting requirements were okay, but that the Bureau, the requirement that an institution use the optional model clause or a substantially similar requirement that the rule was vacated to that effect. The last point I would make is that I think- Only on the substantially similar part of that. I mean, it would be okay to have the model clause. Yes, they certainly could use the model clause, but the way that the rules are set up is it says use X clause or a substantially similar one. So you couldn't, if you just cut out substantially similar, then it would just, you'd be making the problem worse actually. So that would say you may use X clause or otherwise comply. Right. But I think that the, Judge Rao, your question about implementing the district court's judgment, I think gets at the indeterminacy of the district court's understanding of what counts as a mandatory clause, which I think is also reflected in PayPal's view. It's impossible to know what counts as a mandatory clause and under what circumstances. I think no matter what, there may be some kind of line drawing questions even on our approach, but on, I would suggest on the district court's approach and on PayPal's approach, there's no line at all, right? It's just a kind of note when you see it kind of inquiry. And I think that that suggests why that approach is not the appropriate one for the court to take. What do you understand the district court's order to have done? Because when it has the caveat that says insofar as there's mandatory, as I read the district court's decision, there's a sentence before that. And I just can't find the page in the joint appendix, but there's a sentence before that where the district court explains why the, what the bureau did is mandatory. And that sentence encapsulates everything, content, which led me to think then that what the district court meant by saying insofar as they're mandatory, is it meant everything? Yes, your honor. That's, I mean, you wouldn't have to reach that conclusion just based on the way the conclusion is worded, but when you piece it together with the prior sentence, that's the impression one is left with. But is that the assumption on which you're litigating the case or do you have a different assumption? That's our understanding, your honor. I think also if you note on footnote nine on page J, J 86, the court says, because I vacate the short form disclosure requirements and another provision, I don't, I need not reach the other issues that were raised by PayPal. So I think that the court, although the conclusion is sort of pitched to the extent the district court's understanding was that basically any kind of mandatory requirement to do anything counted as a mandatory disclosure clause. I see that my time is up. I'd ask the court if you have no further questions to reverse the district court's judgment. Thank you, Mr. Deal. We'll give you some time for rebuttal. Mr. Shanmugam, we'll hear from you now. Thank you, Chief Judge Srinivasan, and may it please the court. A requirement to issue obligation to issue model clauses for optional use, it foreclosed the power to issue clauses for mandatory use. And as Mr. Deal's argument this morning makes clear, the Bureau now seemingly concedes as much and instead makes a new argument that it did not make below, namely that Congress foreclosed it for mandating only the exact wording of disclosures. This court should reject that possibly narrow interpretation. The Bureau's newfound litigation position here is inconsistent with its own use of the word clause, both in the prepaid rule and in the official commentary. And it would belie common sense to say that the prepaid rule does not impose mandatory disclosure clauses. The rule specifies the fees that may and may not be listed. It prescribes the words that may be used to describe those fees, and it prohibits explanations of those fees, and it closely regulates the ordering and the formatting of the required disclosures. The mere fact that an institution may use immaterial variations in wording does not alter the bottom line here. The Bureau has mandated a particular way of conveying particular content, and those are mandatory disclosure clauses by any measure. The judgment of the district court should therefore be affirmed. If you say the Bureau has mandated a particular way of mandating a disclosure, then that seems to presuppose that the Bureau can mandate the disclosure. What we're talking about is the particular way in which it's being mandated. So that gets to wording as opposed to content. Wording and formatting as well, in our view, Chief Judge Srinivasan, but I think we would concede that when it comes to the content of disclosures, the Bureau obviously has some authority to do that, and that really stems from Section 1693C, which gives the Bureau the authority to mandate the substance of disclosures. What we're really talking about here is the form or the manner of the disclosure. I want to go right to where you started, Chief Judge Srinivasan, with your question to my friend, Mr. Diehl, because I think that that really illustrates kind of the point of difference between us here. Our view is, at bottom, that the fact that substantially similar language can be used to describe some of the fees doesn't render these causes non-mandatory. But I want to emphasize one thing at the outset, which is that our objection here is not to the fact that we have chosen synonyms for ATM withdrawal fee that we can't use here. Our objection, though I would number of synonyms that can be used for that, and if you look at the examples that the Bureau gives in its brief, I would submit that those examples don't seem to afford any sort of meaningful discretion. Our real objection here is to the fact that we are prescribed from providing any sort of explanation as to the fee itself, and this really goes to- You are able to. I'm sorry, Mr. Shemin. You are able to provide explanations in the long form, and you're able to reference the long form in the short form, but the nature of the beast is to have something of a digestible short length, so you have the speech opportunity everywhere else. It is certainly true, Judge Pillard, that we have the ability outside the four corners of the short form disclosure to provide explanation, but to the extent that the Bureau points to that, it is in some sense at war with the Bureau's submission that its goal here is to focus the consumer on the short form disclosure, recognizing that consumers will not necessarily read anything outside the four corners of that disclosure, but I do think that this is a really important limitation, particularly for a company like PayPal, and let me provide an explanation that perhaps illustrates why, and this is obviously a contrafactual example, but hopefully it really underscores the problem here. Let's say that we actually, in fact, charged an ATM withdrawal fee, which as you will see, at least from the product that is the example at page 14 of our brief, we don't, but let's say that we did, but let's say that we charged only a dollar everywhere, but we charged $10 in Hawaii because of the additional transaction cost of doing business there. We would have to list $10 as the fee, and we would be disabled from explaining that that fee is only charged in Hawaii, and that really, I think, illustrates the prescriptive nature of these requirements here. It really is all about the fact that unlike the long form disclosure, where we are able to provide an explanation and where perversely the Bureau doesn't really require any sort of mandatory wording, we are very much constrained, and that's what makes this prescriptive and therefore mandatory. The thing about it is, if the nature of that objection is, look, we have to charge the highest fee that we charge anywhere, and we can't appropriately give a context so that consumers understand that that's an outlier, and really, we rarely ever charge a fee, and if we do, it's going to be a fraction of that. It seems to me that the problem with that is not necessarily that it's a mandatory clause in terms of its wording. It's that it's just arbitrary and capricious for us to be required to issue this narrow misleading disclosure, and you have that to go forward on that challenge, but I'm not sure that that tells me that it's a mandatory clause in terms of its wording. The problem is the content of it. Well, I take the point that there is an aspect of this that goes to whether or not this is arbitrary and capricious, Chief Judge Srinivasan, but I think my point for purpose is, if this colloquy is a more modest one, I really mean to just sort of underscore the prescriptive nature of what is on here, and so to the extent that the Bureau now focuses myopically on the meaning of the word clause, I think it's important to keep in mind that what we're discussing here is whether these are model clauses for optional use or whether they are instead mandatory clauses, and I think my point, I would sort of go back to my first point, which is that the mere fact that you can use immaterial variations in wording doesn't make something anything other than a mandatory clause. You know, to sort of underscore this, let me give another example, if I may. Let's say that, you know, one of our teenagers went out and went joyriding, and I said to him afterwards, you know, I want you to write a hundred times, I'm sorry for borrowing your car. I think that the fact that I gave him the ability to say, you know, vehicle or SUV or some synonym for car wouldn't make those anything other than mandatory sentences, and so regardless of whether you define clause, you know, narrowly to mean precise wording or whether you give it a somewhat more expansive meaning, such as, you know, just a way of providing particular content, and again, I think in context, that's a better understanding. You know, the key point... But Mr. Shanigan, oh, I'm sorry. I'm sorry. No, I was just going to say that the key point here, Judge Pillard, is that there is no meaningful discretion. These are not optional clauses under any ordinary understanding of that phrase. I think, I mean, what about putting it in the context of the disclosure requirement? I mean, it seems like, and I think Mr. Deal was saying this in his own way, that the substantial similarity in a way, as Chief Judge Srinivasan's initial question pointed out, in a way you don't even need that because the disclosures are disclosures about topics, and the point of disclosures is to allow comparison, and so the restriction, really, the confines of the flexibility seem to me to flow less from the articulation that the disclosure should be substantially similar to the optional model clause for optional use, but rather from the in a way that allows comparison, and nobody argues that the statute doesn't allow regulation requiring disclosure in a manner that enables reasonable comparison. So I guess, you know, obviously, in the world that your clients would prefer, they wouldn't have to disclose, and they could say it in any way they want, wherever they want, but they're not fighting the premise of the statute or the ability to regulate to fulfill its disclosure function. So isn't, going on too long, but isn't the narrowness, the substantial similarity really just baked into the statutory enterprise? Well, I don't think so, Judge Pillard, though I think I agree with a large part of what you've said in that my client obviously doesn't have any objection to the substantive requirement that, you know, where, for instance, they charge fees for electronic fee transfers, they have to make disclosures. Again, as I said to Chief Judge Srivastava, this is really, this really goes to, you know, the manner or the form of the disclosures, and in our view, the statutory prohibition on mandating that. And so, as you say, Judge Pillard, we certainly recognize that with regard to the fees that we do charge, we have to make disclosures, we of course do make disclosures, we have no objection to the long form disclosure requirements, precisely because they don't mandate wording, and they provide the flexibility to provide explanations for fees. But, you know, to the extent that Mr. Diehl makes the point that this regime is designed to facilitate comparisons, I guess I'm at a little bit of a loss as to what the statutory authority for that is, because the regime is premised on the notion of optionality and flexibility. It is designed to give institutions flexibility about the form of disclosures, recognizing that there is a safe harbor, recognizing that if an institution complies with the model clauses that are set out by the Bureau, that it will be free of liability. And presumably, parenthetically, going forward on this issue of remedy, presumably that is still true today, which is to say that if a financial institution used the previously mandatory clauses, that would presumably constitute a safe harbor in the wake of the district court's remedy, and that's precisely how the statute is supposed to work here. But Mr. Sherman, would that give you, I mean, it does seem that many of your objections are to the content, right, the fact that there are certain things that must be disclosed. I mean, if we were to find that, say, the only problem was that the clauses in the rule are mandatory, and we were to somehow sever that, does that give your client the relief that it is seeking, or is that just sort of a harmless error because the rule itself requires certain content to be disclosed? If we make the clauses non-mandatory, but, you know, of course, the other provisions are left in place, or maybe on remand you have an opportunity to challenge those as arbitrary and capricious, but, I mean, does that actually give you the relief that you're seeking? I think it does, Judge Rao, and let me sort of say two things here. First, let me say something about the remedy, and then second, let me say something about the content requirements. You know, on the question of the remedy, to the extent that Mr. Deal today seems to fault the district court for its remedy, and I would the court to the district court's order at page JA87, it invalidated the prepaid rule only to the extent that it provides mandatory disclosure clauses. The reason why the district court wasn't more specific about what that means is precisely because the Bureau didn't make any sort of argument to the district court about the precise meaning of the term clause. I would point the court to pages 21 to 28 of the Bureau's brief in support of its cross-motion for summary judgment. You won't find this argument, the clause simply means precise wording, anywhere in the Bureau's brief, so I think the district court can hardly... What's your definition? I think both sides didn't exactly define clause. What is your definition of what the clause is here, and what do you think Judge Leon's relief encompasses? I think what Judge Leon's relief encompasses, Judge Pillard, to be very specific about this, is that Judge Leon effectively was saying that to the extent the short-form disclosure requirements in 1005.18 are mandatory, that that is invalid, that those requirements have to be optional. In our view, that does include wording as well as ordering and formatting. And again, the reason that there was not more macular litigation about this in the district court was because the Bureau did not advance the argument that it's advancing today. But to finish my answer to Judge Rao on the issue of content requirements, again, we have no objection to the Bureau mandating that specific fees be disclosed subject only to the implicit of fees regarding electronic fund transfers to the extent applicable. And I think that the Bureau itself in its own regulations, and I would point the court to the commentary on the regulation that implements that provision, it's 12 CFR 1005.7B5, makes clear that other fees that don't be disclosed. There might be issues concerning what fees the Bureau can mandate disclosure of, and in our view, if it's a fee that's not being charged, the Bureau can't mandate disclosure of that. But other than that, the Bureau has a great deal of discretion, again, as to content. Our objection here is purely to the form and the mandatory form that the Bureau required here. And the best evidence that the Bureau was imposing a requirement, a mandate, was that the Bureau said shall and not may here. And that's the fundamental problem with this new mandatory disclosure regime that the Bureau established. Can I ask this as a follow-up to Judge Rao's question? So the part of the briefing takes issue with the substantial similarity limitation. If one were to assume, just for purposes of argument, I'm not saying that this is a conclusion, but if one were to assume that cabining into substantial similarity is sufficiently close to imposing mandatory language that you carve out and excise the substantial similarity limitation, but otherwise leave the rule standing, does that address a concern that you have, or does it not? Well, it's not entirely clear to me how the Court could go about doing that, because if you take a look at the relevant provisions of the short-form disclosure requirements, each of those provisions requires the use of a particular term or a substantially similar term. So I think actually just excising the substantially similar... I'm not supposing that there's a magic red line that could be done that leaves an intact rule in its wake. I'm not sure that that has to be the case, by the way, and I could be persuaded otherwise. But I think what I'm getting at is ultimately the substantive conclusion, as opposed to the actual redlining of the provision, would be eliminate the substantial similarity limitation, but otherwise leave the regulation in effect. Yeah, I guess what I'm struggling with, Chief Judge Srinivasan, is that I'm not sure exactly how that regime would operate in practice, which is to say, if all you're basically saying is you have a greater degree of discretion to use synonyms when describing the fees, I think we would say that that still is a mandatory regime, because of the limitations on explanation and the other prescriptive aspects of the rule. So I think, frankly, the simplest solution here is to simply say this regime is now an optional regime. But of course, if the Bureau wants to come back with requirements that simply specify font size, I don't think that we would have the same objection to that. And I think that the district court's remedy here actually gives the Bureau some degree of discretion to do that, if that's what the Bureau wants to do. What the Bureau can't do is to mandate the language and also, along with that, to impose limitations on the language. So I think that the FDA gives the Bureau authority to impose disclosure requirements that are greater than font sizes, I mean, with respect to content. If the Bureau, for instance, you know, going back to our earlier discussion, Judge Rao, if the Bureau wants to, say, specify that there have to be disclosures about particular fees that are charged in connection with electronic fund transfers, sure, the Bureau could do that. That would be an exercise of its authority to implement 1693C. And that they have to be done in a particular font size. Sure, I think that that would be fine, too. In our view, as long as the Bureau has, as long as an institution has the ability to provide an explanation as to the fee that it's charging, and as long as the Bureau is not mandating the use of particular language, I think that that would be fine. And all of that would be consistent with the statutory limitation that we're talking about here, which is the prohibition on the Bureau's promulgating clauses for mandatory use, as opposed to model clauses for optional use. Mr. Sherman, why isn't in the regulation in B-2, you know, where it says that a financial institution shall provide a disclosure, and then it says as applicable, why doesn't that allow PayPal to choose which of these disclosure requirements are applicable? So, I don't know which as applicable you're looking at. I guess in 1005.18B-2, which is sort of the, which is really like the preface to many of these disclosure requirements. Yes. No, I see the reference that you're pointing to. And so, you know, I think that the fundamental problem with that is that the Bureau has made clear that all of these items in the so-called static portion of the disclosure have to be included. And indeed, if you look later in 1005.18B, it makes clear the order in which they have to be disclosed. The only ability that an entity has here, if it's not charging a fee, is to list N-A, as indeed PayPal did with a number of the fees, if you take a look at our disclosure at page 14 of our brief. And, you know, I think one of the problems with that is the very real risk of consumer confusion. And while this is outside the administrative record, we point out in our brief that that was a very real risk that was realized when consumers suddenly were confronted with a disclosure that listed this panoply of fees, you know, many of which are inapplicable in the context of digital wallets. And that obviously goes outside the context of this particular statutory challenge, but it in large part explains why we're here. I mean, in some ways your objection is to the supplement, to like the interpretation that the Bureau further specifies, that even when a particular feature is free or is not applicable, you still have to provide these disclosures. Yes. I mean, I think that the supplement makes that clear, Judge Rao, but I think that that's also pretty clear from the ordering requirements themselves in the rule. Evidence of confusion is not in the Yes, that's right. And I don't think that we, you know, sort of need that for purposes of this statutory argument, Judge Pillard. I think that the risk of confusion goes to the constitutional avoidance argument, which we make, but of course our frontline submission is that the statute is really unambiguous in all relevant respects here. And particularly in light of the Bureau's concession that it is precluded from promulgating mandatory clauses. I'm not sure that there's really a lot of meaningful disagreement left on that score. Okay. Thank you, Mr. Shemmigan. Let me make sure my colleagues don't have additional questions for you. Thank you, Your Honor. Thank you. Mr. Deal, we'll give you three minutes for your, back for your rebuttal. Thank you, Your Honor. A few points. I think one important thing to note here is that my friend, Mr. Shemmigan, didn't provide a definition for you to use to understand what a clause is and suggested that we were being sort of myopic and focusing on the word clause. But I think clause is really the, you know, the critical distinction between the party's positions here, the, you know, through the course of the litigation, the issues have clarified. And as the Court has noted, the Bureau clearly has the authority to issue mandatory disclosure requirements. We're not disputing for purposes of this case that we can't do mandatory clauses. So the question is, what's the difference between a mandatory disclosure requirement, which we can do, and what's a mandatory clause that we're not saying that, you know, that we're not disputing that we cannot do? What I take Mr. Shemmigan is saying is what's, what it seems to me that he is most objecting to is that there are certain mandatory clauses that have to be used, even when they are not applicable to a particular financial institution. So in, I mean, in what sense, like if you have to, you know, use certain language that just doesn't apply to your product, why is that not, you know, why is that within the Bureau's authority? Well, the Bureau doesn't require to use particular language to talk about your product. What it says is you need to tell consumers what fee you charge, you know, what the amount of the fee you charges, and maybe that you charge $0. That's still applicable to your product. And I think it's helpful for consumers to understand to the extent you don't offer a particular service, that you don't offer it. And so therefore that that's not applicable. I think that making clear to consumers here are, you know, I think the important context here is that these are the fees that the Bureau picked are what the Bureau considered to be the most important, the most common fees that prepaid accounts contain. And, you know, that's like sort of across the board for prepaid accounts. And so the Bureau said, you need to tell consumers basically what the situation is with respect to each of these, these fees with respect to each of these services. And so, but you can use either the language to describe that you can use the language that the Bureau has identified, or you can use any other substantially similar. Is that flexibility meaningful, though, where an institution just simply doesn't provide for that service or charge that fee? There is flexibility with respect to the language, but there is not flexibility with respect to the content requirement. You know, that's the, that's the balance that Congress struck here, gave the Bureau the authority to require particular information, particular content that be prescribed, that institutions had to provide, while at the same time saying, providing this optional model clause provision with respect to language. And we think that the Bureau's rule, you know, meets that, meets that combination. I see, I'm sorry. One, one point that came up a couple of times in the course of Mr. Shanmugam's argument is the prescription about order. And can you just give your response on the Bureau's view as to why prescribing the order in which things are laid out doesn't verge on wording as opposed to content? Well, I think it, it doesn't match the word clause at all. You know, you could have a series of mandatory clauses and say, you can put them in any order you want. That'd be a series of mandatory clauses. The fact that you need to provide information in a particular order, you know, this piece of information, then this piece of information, then that piece of information, I don't think doesn't suggest that there's anything other than optional model clauses. Well, I take it that the point would be that then each one of those pieces of information is not a separate clause. It's that the entire thing is a mandatory clause because it's prescribing the order in which sub-aspects have to be disclosed. Your Honor, I don't think that there's any sort of textual basis for saying that ordering is what Congress was concerned about with respect to the optional model clause provision. The statute is focused, you know, both in that optional model clause provision and in 1693C on readily understandable language. That's the goal. And so the, any kind of ordering requirement has, has really nothing to do with the, the Bureau's obligation. Again, what we're talking about here is a, an assumption based on the obligation to issue optional model clauses. And so in order for inconsistent with that, it needs to conflict with that. And I don't think that any requirement with respect to the ordering of providing the information is in any way inconsistent with the obligation to issue optional model clauses. Okay. I just wanted to give you a chance to respond to that since it came up. Judge Filler, did you have a question? I was just going to ask whether if, if the rule, and I recognize it's counterfactual and I recognize we're not, you know, in the business of redrafting, but just to sort of understand the nature of your position, if the rule required disclosures under Romanet 3, for example, of a periodic fee, it currently says the periodic fee charged for holding the prepaid account assessed on a monthly or other periodic basis using the term monthly fee, annual fee, or substantially similar term, would the Bureau be achieving its objective just as much if it said disclosures required the periodic fee charged for holding a prepaid account assessed on a monthly or other periodic basis, period. The term monthly fee or annual fee are deemed compliant. That's your optional model clause, but a substantially similar term may also be used. That wouldn't depart in any way from what you're trying to achieve. I think that that would be, if I'm understanding your hypothetical correctly, Judge Hill, I think that that is what the Bureau did in just in other words. And what if we said in the end, instead of, but a substantially similar term may also be used, but other terms that are readily understandable or fully accurately and effectively disclose the information may also be used. I mean, I think there may be some slight difference there. I think that the Bureau chose substantially similar, and I don't want to give up that choice. I think that that helps everyone ensure that there's a similarity between the forms, which I think is an important goal. But I think that the way that you have proposed rewriting it would achieve very similar results. Substantially similar results, right? Thank you. If there are no further questions, we ask the court to reverse the district court's judgment. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Pillard, Rao